WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin Renee R., | No. CV-24-03459-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Robin Renee R. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying her disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision will be **vacated and remanded** for further administrative proceedings.

## I.   BACKGROUND

### A.      Factual Overview

Claimant was 45 years old on her alleged disability onset date of March 27, 2021. (Administrative Record ("AR") 28.) She has limited education[2] and her past relevant work is semi-skilled. (*Id.*) Claimant filed an application for disability insurance benefits under Title II, and an application for supplemental security income under Title XVI, on May 27,

---

[1]     As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

[2]     Claimant represented that she had a limited education in written filings but reported graduating from high school and taking some college courses upon examination. (AR 28.)

2021.  (AR 15.)   The claim was initially denied on February 15, 2022, and upon reconsideration on January 19, 2023.  (*Id.*)  Claimant appeared via video at a hearing on December 11, 2023.  (*Id.*)  The ALJ denied Claimant's claim on February 2, 2024.  (AR 30.)  The Appeals Council denied Claimant's request for review on October 11, 2024.  (AR 1.)  Claimant then appealed to this Court.  (Doc. 1.)

        **B.**      **The SSA's Five-Step Evaluation Process**

To qualify for Social Security Disability Insurance benefits, a claimant must show that she "is under a disability."  42 U.S.C. § 423(a)(1)(E).  To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment."  *Id*. § 423(d)(1).  The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy.  *Id*. § 423(d)(2).  The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a)(1).  The steps are followed in order, and each step is potentially dispositive.  *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity."  *Id*. § 404.1520(a)(4)(i).  "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit."  20 C.F.R. § 416.972(a)–(b).  If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments."  *Id.* § 404.1520(a)(4)(ii).  To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or

equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C.      The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of March 27, 2021. (AR 17.)

At Step Two, the ALJ determined that Claimant had severe impairments, including degenerative changes of the cervical and lumbar spine and the left foot and ankle, bipolar disorder, anxiety, migraine headaches, and unspecific myalgia/myositis/arthralgia. (AR 18.)

At Step Three, the ALJ found that Claimant did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404.  (*Id.*)  With respect to the mental impairment, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had no limitations in (2) interacting with others and (4) adapting or managing oneself; mild limitations in (1) understanding, remembering or applying information; and moderate limitations in (3) concentrating, persisting or maintaining pace.  (AR 20–21.) The ALJ also found that the medical evidence of record did not establish both ongoing medical treatment, mental health therapy, psychosocial supports, or highly structured settings that diminished the impairment symptoms and signs, thus the record failed to establish the presence of "paragraph C" criteria.  (AR 21.)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she should never climb ropes, ladders or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extremely hot temperatures, humidity, loud noise, vibration, unprotected heights and moving and dangerous machinery.  She was able to understand, remember, and carry out simple instructions and tasks.

(AR 20–21.)

At Step Four, the ALJ found that Claimant was not capable of performing any past relevant work.  (AR 28.)  At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform considering her age, education, work experience, such as "Sample Distributor," "Housekeeper/Cleaner," and "Photocopy Machine Operator."  (AR 29.)  Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date through February 2, 2024.  (AR 29–30.)

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record."

*Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).   Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).   The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record.   *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).   Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld."   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").   Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.   Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.   DISCUSSION

Claimant identifies two arguments on appeal, asserting that the ALJ committed harmful error by (1) rejecting the assessment from Kari Miller, N.P. and portions of the assessment of Kari Coelho, Psy.D., without providing sufficient explanation supported by substantial evidence; and (2) rejecting Claimant's symptom testimony in the absence of specific, clear and convincing reasons supported by substantial evidence.  (Doc. 14 at 1–2.)

### A.  Medical Testimony

An ALJ must evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citations omitted).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (alterations in original) (quotation marks omitted).  An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (citation modified).  Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787.

In this case, the ALJ evaluated evidence from multiple medical sources and, as relevant here, found Dr. Kari Coelho, Psy.D.'s[3] opinion "generally persuasive" and Nurse Practitioner Kari Miller's ("NP Miller") opinion "not persuasive." (AR 27–28.)  Claimant challenges the ALJ's findings concerning NP Miller and Dr. Coelho.

### 1.  NP Miller's Opinion

NP Miller met with Claimant twice, on May 4, 2022 and June 10, 2022, to provide mental health treatment services. (*Id.*; *see also* AR 691, 782.)  On July 25, 2022, NP Miller completed a checkbox "Medical Assessment of the Patient's Ability to Perform Work Related Activity" finding that included virtually no explanation for her opinions that Claimant had:

- "Severe Limits" in her ability to understand, remember, and apply information;
- Virtually no limits with respect to her ability to interact with others;
- "Moderately Severe Limits" in her ability to "[r]espond appropriately to changes in the work setting" and "[s]et realistic goals or make plans

---

[3]  The ALJ's Decision misspells Dr. Coelho's last name as "Coelo."  The correct spelling is used here.

- 6 -

independently of others";

- "Severe Limits" in traveling "to unfamiliar places or us[ing] public transportation";

- "Mild Limits" in performing "activities within a schedule, maintain[ing] regular attendance, and be[ing] punctual within customary tolerance"; and

- "Moderately Severe Limits" in carrying out "simple one or two-step instructions," "[maintaining] attention and concentration without interruptions from psychologically-based symptoms," "[working] in coordination with or proximity to others without being distracted by them," "mak[ing] simple work-related decisions," and "[completing] a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

(AR 638–40.)   She further opined that the impairments began in August 2011, almost eleven years before she issued her opinion, and that Claimant was, on average, likely to, be absent from work "[m]ore than three times a month."  (AR 641; *but see* AR 640 (opining Claimant only had mild limits in maintaining regular attendance and being punctual).)

Claimant argues that the ALJ failed to adequately analyze the supportability and consistency of NP Miller's opinion in concluding that the opinion was not persuasive. (Doc. 14 at 13–17.)  The ALJ explained NP Miller's opinion "was not well supported" for the following reasons:

> She first saw the claimant on May 4, 2022 but concluded the limitations existed since 2011, despite the claimant working at substantial gainful activity level in 2017. There is too much reliance on subjective complaints and the opinion was inconsistent with finding on August 1, 2022 that the claimant was not SMI [Seriously Mentally Ill].  Ms. Miller had only had two phone visits with claimant and, on May 4, 2022, she noted normal memory, judgment, thought process and content, insight and speech and she assessed "unspecified problem related to unspecified psychosocial circumstances." On June 11, 2022, the claimant denied nightmares, flashbacks, intrusive memories and had no concerns about PTSD.

(AR 27–28.)

a.      Consistency

Claimant argues that the ALJ erred by failing "to provide a consistency analysis for NP Miller's assessment."  (Doc. 14 at 14.)  While the ALJ's discussion of the consistency

- 7 -

factor was limited, the ALJ properly addressed the consistency factor by evaluating NP Miller's opinion in the context of the other medical and nonmedical evidence in the record. The ALJ noted that NP Miller's opinion that Claimant was disabled as of 2011 was inconsistent with the fact that Claimant was "working at substantial gainful activity level in 2017," more than five years after NP Miller's identified limitations onset date of August 2011. (AR 27.)  The ALJ also noted that the finding was inconsistent with medical records reflecting the "finding on August 1, 2022 that the claimant was not SMI."  (*Id.*)[4]

Finally, the ALJ generally noted that the opinion was not "consistent with a recorndd [sic] of normal mental status exams," (AR 28), which the ALJ had set out in detail earlier in the decision, with citations to the pertinent medical records, (*see* AR 20–21 (finding at Step Three that Claimant had mild limitations in understanding, remembering or applying information, no limitations in interacting with others, a moderate limitation in concentrating, persisting or maintaining pace, and no limitation in adapting or managing herself); *see also* AR 25–26 (extensively analyzing medical records and concluding that Claimant regularly exhibited "normal status and behavior," her "treatment was effective," she often "denied anxiety and depression," she "had appropriate mood and affect . . . with sufficient . . . or good eye contact . . . and normal speech," she demonstrated "no memory impairment," she showed that her "thought process was logical," and she showed "attention and often concentration were within normal limits . . . good . . . normal . . . or focused").)

Here, the ALJ found that NP Miller's opinion was inconsistent with both non-medical evidence (her gainful employment until 2017) and the medical record as a whole. This is a proper basis for discounting a medical opinion.  *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ properly rejected medical opinion that was "inconsistent with the medical records"); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of medical provider's opinion because, among

---

[4]   Claimant challenges the ALJ's reliance on the August 2022 finding that she wasn't SMI because she was later deemed eligible to receive SMI services in March 2023.  (Doc. 14 at 15.)  But the ALJ addressed this fact in the decision, and discounted the March 2023 determination because there were no records showing that it was made "by an acceptable medical source."  (AR 25.)  Claimant ignores the ALJ's decision for discounting the March 2023 SMI determination, and her argument thus fails.

other things, it "was contradicted by other statements and assessments [of the claimant's] medical condition"). Because the ALJ analyzed the consistency factor—and his conclusion was supported by substantial evidence—Claimant's argument fails.

b.    Supportability

Claimant next argues that the ALJ erred in analyzing the supportability of NP Miller's opinion. (Doc. 14 at 15–17.) Because the ALJ's supportability analysis was based on substantial evidence in the record, Claimant's argument fails.

The ALJ correctly noted that NP Miller's finding that the onset of disability of August 2011 was unsupported given that NP Miller evaluated Claimant more than a decade later. (AR 27.) The ALJ further explained that NP Miller relied too much on Claimant's subjective complaints, and that NP Miller's treatment notes failed to support her opinion because they showed that Claimant exhibited "normal memory, judgment, thought process, and content, insight and speech" and further showed that Claimant "denied nightmares, flashbacks, intrusive memories and had no concerns about PTSD." (AR 27–28; *see also* AR 689–90, 797.)

"An ALJ may properly reject a medical source opinion that is not supported by his or her own medical records and/or objective data." *Carey S. v. Saul*, 2021 WL 1187059, at *4 n.1 (E.D. Wash. 2021) (citing *Tommasetti*, 533 F.3d at 1041 ("Dr. Nachenberg's medical records do not provide support for the limitations set out in the Questionnaire. The incongruity between Dr. Nachenberg's Questionnaire and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of [the claimant's] limitations.")); *see also Batson*, 359 F.3d at 1195 (ALJ properly discounted treating physician's opinion because, among other things, it was based on the claimant's "subjective complaints without objective evidence" and "lacked substantive medical findings to support [the physician's] conclusion" (cleaned up)).

Claimant nonetheless argues that the ALJ erred for several reasons. First, she argues that the ALJ erred in stating that NP Miller relied too heavily on Claimant's subjective complaints because NP Miller did not actually state that she was relying on Claimant's

complaints to support her opinion. (Doc. 14 at 14–15.) The problem with this argument is that NP Miller responded to a question in the questionnaire asking for "objective evidence (*i.e.*, diagnostic findings, psychological examination findings, etc.)" supporting her opinion, with Claimant's *subjective* complaints of "insomnia and decline to functioning in terms of cooking, cleaning, getting out of bed." (AR 638.) In other words, she only relied on subjective complaints rather than objective evidence, and the ALJ thus correctly discounted her opinion. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (affirming ALJ who discounted a medical opinion that was "based almost entirely on the claimant's self-reporting . . . without any independent analysis or diagnosis" and with "no attempt to cite objective findings" (quotation marks omitted)); *see also Carey S.*, 2021 WL 1187059, at *4 n.1 (citation omitted).

Claimant also takes issue with the ALJ's statement that NP Miller only examined Claimant twice. (Doc. 14 at 15–16.) In isolation, the fact that NP Miller telephonically met with Claimant twice might not constitute an adequate basis to discount her medical opinion. But that question need to be resolved in this case because the ALJ explained that NP Miller's observations at those two telephonic visits failed to support her opinions. (AR 27–28.) Again, if a treatment provider's own records conflict with their opinion, that opinion may be deemed unsupported. *See, e.g.*, *Carey S.*, 2021 WL 1187059, at *4 n.1 (citation omitted).

Claimant next appears to argue that the ALJ erred in using treatment notes reflecting normal cognitive findings—like those relating to normal memory, judgment, and thought process—to discount NP Miller's opinion that Claimant suffered limitations due to her affective disorders like depression and anxiety. (Doc. 14 at 16–17 (collecting cases).) But again, the premise of Claimant's argument is incorrect. The ALJ disregarded NP Miller's opinion because her *cognitive* findings and notes failed to support her *cognitive* opinions, logically causing the ALJ to question her whole opinion. Indeed, after setting forth normal cognition findings in her treatment records, (*see* AR 689–90, 797), NP Miller opined that Claimant had a "Severe Limit"—defined in her opinion as an "[i]mpairment preclud[ing]

- 10 -

ability to perform work-related functions 21% or more of an 8-hour workday"—in her ability to understand, remember, and apply information, (AR 638), and found that she had "Moderately Severe Limits"—defined as "impairment preclude[ing] ability to perform work-related functions 11-20% of an 8-hour workday"—in several other categories of cognition. Substantial evidence supported the ALJ's decision finding NP Miller's opinion unpersuasive.

### 2. Dr. Coelho's Opinion

Dr. Coelho met with Claimant on November 22, 2021, for purposes of performing a "psychological consultative examination." (AR 27; *see also* AR 556-63.) Dr. Coelho determined that Claimant did have limitations associated with her psychological diagnosis expected to last 12 continuous months from the date of the exam. (AR 561.) With respect to understanding and memory, Coelho assessed that Claimant could "understand and remember simple instructions" and "was able to follow a 3-step command," but also noted some challenges Claimant faced during the examination ("struggled to recall 2 out of 3 words after a few minutes time lapse") and that Claimant reported memory challenges. (AR 561.) Regarding sustained concentration and persistence, Dr. Coelho opined that Claimant was "capable of carrying out simple instructions" and "demonstrated fair attention and concentration," but also noted that Claimant reported "poor task persistence" because she "puts off things that she needs to do due to her depression." (*Id.*) And with respect to Claimant's ability to socially interact and adapt to change, Dr. Coelho did not find any limitations but noted that Claimant "does demonstrate some difficulty holding the pencil during the mini-mental status portion of this evaluation." (*Id.*)

Claimant argues that the ALJ failed to explain why he disregarded "the portions of Dr. Coelho's assessment not congruent with work"—specifically, her "poor recall, poor task persistence, and hand weakness." (Doc. 14 at 17.) This argument fails because Dr. Coelho's observations do not constitute medical opinions based on the definition set forth in the pertinent regulation. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more

impairment-related limitations or restrictions . . . ." 20 C.F.R. § 404.1513(a)(2). Because the observations do not constitute medical opinions, there was no need for the ALJ to evaluate them for supportability and consistency. *See id.* § 404.1520c(b)(2) (making clear that supportability and consistency when evaluating "a medical source's *medical opinions*" (emphasis added)).

Here, based on all of her observations, Dr. Coelho medically opined that Claimant could "understand and remember simple instruction," "was able to follow a 3-step command," was "capable of carrying out simple instructions," "demonstrated fair attention and concentration," and had no limitations or restrictions concerning social interactions or her ability to adapt to change. (AR 561). The ALJ found Dr. Coelho's opinion "generally persuasive," (AR 27), and incorporated the limitations and restrictions Dr. Coelho identified—i.e., her medical opinions— in the RFC, (AR 21–22). Claimant has no basis for challenging the ALJ's assessment of Dr. Coelho's opinion.[5]

### B.    Evaluation of Claimant's Symptom Testimony

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject [her] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655 (citation omitted). "This is not an easy requirement to meet:  The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom

---

[5] In a two-sentence paragraph, Claimant conclusorily suggests that the ALJ also erred in finding other "nonexamining reviews' and examining physician's opinions . . . persuasive, but . . . provided almost no explanation for doing so." (Doc. 14 at 19 (citing AR 28).)  This argument will not be considered because Claimant has not argued it with any specificity. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address a finding by an ALJ because the claimant "failed to argue this issue with any specificity in his briefing" (citation omitted)); *cf. Indep Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." (quotation marks omitted)).

testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). An ALJ, however, is "not required to believe every allegation of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.*

Claimant generally asserts that the ALJ improperly discounted her symptom testimony because he failed to connect his analysis to her specific testimony and failed to view the record as a whole, instead cherry-picking citations that ignore Claimant's multiple years of chronic pain and mental health symptoms. (Doc. 14 at 20–22.) She also challenges certain specific portions of the ALJ's analysis, arguing that he (a) improperly disregarded her symptom testimony based on her course of treatment because he did not show any inconsistency between the two; (b) cited normal cognitive functioning to disregard testimony concerning affective disorders, thereby violating binding precedent; and (c) erroneously relied on Claimant's activities of daily living because those activities did not contradict her testimony. (*Id.* at 20–24.) Each of her arguments is addressed in turn.

### 1.    General Challenges to the ALJ's Analysis

Claimant generally asserts that the ALJ failed to connect "a specific inconsistency with any particular portion of [Claimant's] work-preclusive symptom testimony," running afoul of the Ninth Circuit's decision in *Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014). (*Id.* at 20.) In that case, the Ninth Circuit criticized an ALJ for "provid[ing] no *reasons* for the credibility determination" and noting that the Commissioner's arguments on appeal relied on reasons "dispersed in seemingly random places in the decision." *Burrell*, 775 F.3d at 1137.

Claimant's reliance on *Burrell* is misplaced. In this case, the ALJ generally stated that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence

in the record for the reasons explained in this decision" and that her "statements about the intensity, persistence, and limiting effects of her symptoms . . . were inconsistent because the medical evidence of record was not fully consistent with her allegations."  (AR 22.) But unlike in *Burrell*, the ALJ then set forth an extensive analysis of Claimant's symptoms and the relevant medical evidence over multiple pages.  (AR 22–27.)  There is nothing wrong with how the ALJ set out his credibility analysis.  *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.").

Likewise, Claimant's general assertion that the ALJ cherry-picked evidence to support his conclusion fails given his extensive analysis of the record and evaluation of data that both supported and contradicted her symptom testimony.  For example, with respect to Claimant's assertions of spinal pain, the ALJ weighed the evidence in the medical record and noted that although Claimant went underwent significant treatment for those issues, the evidence showed both that the issues were not as severe as Claimant suggested and that she obtained relief from her treatment.  (*Compare* AR 23 (recognizing spinal injury "severe enough to have required significant treatment"), *with* AR 23 (noting that Claimant underwent surgery, "resolving her radicular symptoms" and then she "took Tylenol as needed after she came off pain medication by August 8, 2023"), *and* AR 24 (noting that "the impairments themselves were not as serious as suggested" based on imaging results and the lack of any "record of cord compression or central canal stenosis, often associated with more severe spinal pain").)

In effect, Claimant argues that her proposed reading of the record is more reasonable than the ALJ's.  But it is an ALJ's responsibility—not a district court's—to resolve conflicts in the medical record.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Torres v. Astrue*, 2012 WL 1032897, at *6 (C.D. Cal. 2012) (deferring to the ALJ's decision where references in the record supported both impairment and non-impairment, because "[i]t is the ALJ's province to resolve conflicts in the medical record" when

evaluating the credibility of a claimant); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (holding that if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld"). Put another way, "[w]here evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (citation omitted).

### 2.    Course of Treatment

#### a.    Spinal treatment

Claimant challenges the ALJ's determination that her course of treatment for both physical and medical impairments was inconsistent with her symptom testimony. (Doc. 14 at 22.) She focuses first on her cervical spine impairment, about which she testified that she can't move her neck "to the left or right so far," "can't bend down without it hurting," has "surging pain that runs down through my hand." (AR 48–49.) But as set forth in the previous section, the ALJ evaluated the relevant medical records and provided specific, clear and convincing reasons for why those records contradicted her testimony concerning her neck and back pain. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008).

#### b.    Migraine treatment

Claimant's challenge to the ALJ's explanation for disregarding her testimony about her migraines, however, is meritorious. During the December 11, 2023 hearing, Claimant testified that she has migraines "[a]bout three times a week, and it could last up to two days," and that she took Botox but "it didn't work . . . [s]o they're going to start me on a new shot." (AR 49.) Although the ALJ provided specific and clear reasons for disregarding this testimony, his reasons were not convincing because the medical records he cited did not generally support his conclusions.

The ALJ began by describing the frequency and severity of Claimant's migraines, noting that "they came in clusters, three or four days in a row," that after she started Botox

treatments in July 2022 they "reduced to eight in a month," and that in October 2023 Claimant reported migraines on "16 days over the prior month, lasting nine to 12 hours." (AR 24.)  The ALJ disregarded her symptom testimony, however, based on his assertion that migraines "were not as much of an issue in the early relevant period," (AR 24), Claimant denied having migraines in January 2022, (AR 24 (citing AR 604, 835)), she only first went to a neurologist in March 2022, (AR 24 (citing AR 832)), "her Botox treatment appeared to have been helpful but not so necessary that she sought the treatment on a regular basis" and did not take that treatment "as regularly as recommended," (AR 24 (citing AR 1064)), and there were "medical visits where [Claimant] denied migraine headaches,"  (AR 24 (citing AR 654, 662)).

Several of the ALJ's assertions are either unsupported or rely on medical records that do not support his contentions.  First, the ALJ cites no support for his suggestion that migraines were not a concern early in the relevant period—nor could he, given records establishing that Claimant complained of migraines no later than October 2020. (AR 519–22 (October 29, 2020 treatment records reflect her complaints about migraines and her past treatments concerning migraines).)  Second, the ALJ's statement that Botox treatment appeared to help Claimant finds no support in the record—indeed, the record the ALJ cites confirms that even after taking Botox she continued to suffer migraines.  (AR 1064.) Furthermore, the ALJ's reliance on two records to show that she denied migraines is misplaced because neither of those records reflect a denial of migraines.  (AR 654, 662.) Indeed, one of the records shows that her treatment provider included "migraines" among the diagnostic impressions.  (AR 662.)  Accordingly, the ALJ's conclusion that Claimant improved as a result of her migraine treatment is not supported by substantial evidence, and his reliance on Claimant's treatment to disregard his symptom testimony concerning her migraines is not convincing.

### 3.   Cognitive Functioning and Affective Disorders

Claimant asserts in a short paragraph that the ALJ erred in relying on Claimant's normal cognitive functioning to disregard her "symptom testimony."  (Doc. 14 at 23.)

Claimant does not make this argument with any specificity. Accordingly, it will not be considered. *See Carmickle*, 533 F.3d at 1161 n.2 (declining to address a finding by an ALJ because the claimant "failed to argue this issue with any specificity in his briefing"); *cf. Indep Towers of Wash.*, 350 F.3d at 929.

### 4.    Activities of Daily Living

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). But "[o]nly if the level of activity [is] inconsistent with Claimant's claimed limitations do daily activities have any bearing on Claimant's credibility." *Ferguson*, 95 F.4th at 1203 (second alteration in original) (quotation marks omitted).

Claimant generally complains that the ALJ improperly relied on Claimant's activities of daily living to discount her symptom testimony, but only identifies one specific area of testimony she claims the ALJ improperly disregarded: her testimony that her mental health would require her to call in sick "a couple times" during the week. (Doc. 24 at 23–24 (citing AR 53).) The ALJ did not err in disregarding this testimony based on Claimant's activities of daily living because he found that Claimant performed a wide range of activities inconsistent with her testimony about the frequency she would have to miss work due to her mental health:

> The claimant's own reports indicated less serious impairments than the claimant represented at the hearing. In a function report, the claimant stated that she had no problems getting along with family, friends, neighbors, or others, and she also tolerated others in stores (Exhibit 5E). The claimant denied decreased concentration to one treating physician (Exhibit 10F at p. 26), and she reported no problem with concentration in a report (Exhibit 5E).

> The claimant performed activities that reflect normal mental functioning. Socially, the claimant lived with a male friend (Exhibit 7F at p. 2), and the claimant's mother reported the claimant tolerated other people in stores (Exhibit 3E). Cognitively, the claimant did things requiring normal concentration, such as operating a motor vehicle (Exhibit 7F at p. 3), watching movies, caring for animals (Exhibit 21F at p. 2), paying bills, handling finances, and texting (Exhibit 5E).

(AR 26.)  Accordingly, Claimant's argument fails.

While Claimant (and district judges) might disagree with the ALJ's conclusions, he provided specific, clear and convincing reasons for disregarding Claimant's symptom testimony.  *See Moncada*, 60 F.3d at 523 ("Where evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld." (citation omitted)).

### C.    Remand

The ALJ's findings regarding Claimant's symptom testimony concerning her migraines require reversal.  Ordinarily, if the Court reverses an ALJ, the Court remands for further proceedings.  *Garrison*, 759 F.3d at 1019.  Claimant requests that the Court apply the "credit-as-true rule," however, (Doc. 14 at 25; Doc. 19 at 10–11), which would result in the immediate award of benefits, as opposed to remand for further proceedings. *Garrison*, 759 F.3d at 1019.

The credit-as-true rule only applies if (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citations omitted); (2) the "record has been fully developed," such that there are no "outstanding issues that must be resolved before a determination of disability can be made" and "further proceedings would not be useful," *id.*; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," *Trevizo*, 871 F.3d at 683 (citation omitted).  The Ninth Circuit has described this result as appropriate "only in rare circumstances." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quotation marks omitted).  "The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."  *Revels*, 874 F.3d at 668 (cleaned up).

The Court determines in its discretion to remand for further proceedings and not apply the credit-as-true rule.  Here, the ALJ's errors largely lie in his failure to properly evaluate and explain his reasoning with respect to rejecting Claimant's migraines and associated symptoms.  Thus, there are outstanding issues that must be resolved.  The ALJ

might, after properly evaluating the record and explaining his reasoning, decide again on remand that Claimant is not disabled. Accordingly, the Court cannot find that further proceedings would "serve no useful purpose." *See Brown-Hunter*, 806 F.3d at 495 (quotation marks omitted); *id.* at 495–96 (rejecting the claimant's request for awarding benefits based on the ALJ's legal error).

## IV.   CONCLUSION

Because the ALJ did not err in evaluating NP Miller's or Dr. Cuelho's opinions, but did err in disregarding one portion of Claimant's symptom testimony, the ALJ's decision is reversed.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded for further proceedings**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 31st day of March, 2026.

Honorable Sharad H. Desai
United States District Judge